UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        v.<br><br>RICHARD LEE CANTERBURY,<br><br>                                    Defendant. | Case No. 2:16-cr-00107-KJD-PAL<br><br>**ORDER DENYING DEFENDANT'S MOTION TO VACATE** |

Before the Court are Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF #150) and Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF #181). The Court did not require the government to respond.

I.      Factual and Procedural Background

Defendant Richard Lee Canterbury ("Canterbury") was found guilty of bank robbery after a jury trial on February 21, 2018. (ECF #117). Canterbury was sentenced to 125 months in prison, followed by three years of supervised release. (ECF #146, at 2–3). Canterbury filed his first § 2255 motion to vacate, set aside, or correct sentence on September 17, 2018. (ECF #150). The motion argues that the detention order issued by the magistrate judge pursuant to the Bail Reform Act of 1984 was improper and that the Court did not have jurisdiction to issue such a detention order. Id. at 7–13. He then filed an amended § 2255 motion to vacate, set aside, or correct sentence on November 16, 2020. (ECF #181). In his amended motion, Canterbury raised three grounds for his alleged unlawful imprisonment. Id. at 6–10. First, Canterbury argues that the trial judge was not impartial when Canterbury was "forced to make a choice between unprepared self-defense . . . or allow stand-by-attorney Ericsson to represent [him]." Id. at 6–7. Second, Canterbury argues that he was denied effective assistance of counsel at trial because his

attorney did not "aggressively object each day of trial" the Court's decision to reappoint counsel on the first day of trial after Canterbury acknowledged he was unprepared to represent himself. Id. at 9. Third, Canterbury argues he was denied effective assistance of appellate counsel because his appellate attorney failed to raise an ineffective assistance of counsel claim on appeal. Id. at 10.

Prior to trial, Canterbury had great difficulty working with his attorneys. Canterbury filed six motions to replace or substitute his counsel. (ECF #23, 35, 37, 48, 52, & 67). After working with three different attorneys, Canterbury filed a motion to allow self-representation. (ECF #77). The Court, after ensuring that Canterbury knew the consequences of his choice, granted his motion, and allowed him to represent himself. (ECF #78). Attorney Thomas Ericsson ("Ericsson"), who was Canterbury's third appointed attorney, was ordered to remain on the case as Stand-By Counsel. Id. Canterbury then filed *pro se* motions, including multiple motions to dismiss and a motion to allow trial in absentia. (ECF #86, 87, 88, & 108). The Court denied the motions, explained why Canterbury must be present at the trial, and reappointed Ericsson as Canterbury's counsel on the day trial began. (ECF #114, at 1). Canterbury acknowledged that he no longer wished to represent himself. Id.

II.     Legal Standard

Title 28 U.S.C. § 2255 allows a defendant in federal custody to challenge his conviction on the grounds that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Though § 2255 allows certain collateral attacks to a judgment of conviction, it is not intended to give criminal defendants multiple opportunities to challenge their sentences. United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985). Rather, § 2255 limits relief to cases where a "fundamental defect" in the defendant's proceedings resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). That limitation is based on the presumption that a defendant whose conviction has been upheld on direct appeal has been fairly and legitimately convicted. United States v. Frady, 456 U.S. 152, 164 (1982).

The Court assumes that a judgment of conviction is valid once a defendant has waived or

completed his appeal. Id. For that reason, the United States need not respond to a § 2255 petition until ordered to do so. Rule 4(b) of the Rules Governing § 2255 Petitions requires the Court to promptly review each § 2255 petition. If the Court cannot summarily dismiss the petition, it must order the United States attorney to respond. After reviewing the government's response, the Court must hold an evidentiary hearing unless the record makes clear that the petitioner is not entitled to relief. United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1988). Alternatively, the Court may dismiss the petition without response or hearing if it is clear from the record that the petitioner does not state a claim for relief or if the claims are frivolous or palpably incredible. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) (citing Baumann v. United States, 692 F.2d 565, 570–71 (9th Cir. 1982).

### III. Analysis

A § 2255 motion comes with a "1-year period of limitation." 28 U.S.C. § 2255(f). The limitation period runs from the date on which the conviction becomes final, the date on which the impediment created by government action is removed, the date on which the right asserted was initially recognized by the Supreme Court, or the date on which the facts supporting the motion have been discovered through the exercise of due diligence. Id. at § 2255(f)(1)–(4). A conviction becomes final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally decided." United States v. LaFromboise, 427 F.3d 680, 683 (9th Cir. 2005). Canterbury appealed his conviction but did not file a writ of certiorari with the Supreme Court. The Court entered its order on the court of appeals' mandate affirming Canterbury's conviction on April 13, 2020. (ECF #176). Canterbury then had 90 days to seek a writ of certiorari from the Supreme Court. Zepeda v. Walker, 581 F.3d 1013, 1016 (9th Cir. 2009). He did not seek a writ of certiorari and his conviction became final on July 13, 2020. Canterbury filed his original motion on September 17, 2018 and his amended motion on November 16, 2020, both within the one-year deadline.

Canterbury argues that the Bail Reform Act of 1984 and the Comprehensive Crime Control Act of 1984 are unconstitutional because they were sent to the president not as a bill, but

as a joint resolution included in an appropriations bill. Because it was part of an appropriations bill, which governs the spending for the fiscal year, Canterbury argues that the Bail Reform Act expired at the end of that fiscal year and is unconstitutional. However, the Eighth Circuit addressed this issue shortly after the passage of the Bail Reform Act. The Comprehensive Crime Control Act of 1984, which includes the Bail Reform Act, "has become law by way of amendment to a joint resolution making 'continuing appropriations' for the operation of the federal government." United States v. Powell, 761 F.2d 1227, 1234 (8th Cir. 1985). "The fact that the words at the top of the first page of a law are 'a bill' instead of 'a joint resolution' is of significance only for internal congressional purposes." Id. at 1235. A joint resolution, like the Bail Reform Act of 1984, once signed by the president, "is every bit as much of a law as a bill similarly signed." Id. Joint resolutions are bills "within the congressional rules and the processes of the Congress. [They] are sent to the President for approval and 'have the full force of law.'" United States v. Qazi, No. 2:15-cr-00014-APG-VCF, 2017 WL 2484102, at *8 (D. Nev. June 8, 2017) (quoting Int'l Brotherhood. of Elec. Workers v. Wash. Terminal Co., 473 F.2d 1156, 1163 (D.C. Cir. 1972)). The court echoes the Eighth Circuit ruling that "Section 3143(b) of Title 18, as enacted by the Bail Reform Act of 1984, is constitutional." Powell, 761 F.2d at 1235.

Canterbury's next argument is that the Court was not impartial when it forced him to either represent himself while unprepared or reappoint Ericsson. Canterbury argues that he was unprepared to represent himself because he did not have glasses and could not read the documents sent to him prior to trial. He argues that Ericsson was unprepared because he had only been Stand-By counsel and immediately moved to continue upon being reappointed. However, the Court is not persuaded by Canterbury's argument.

Canterbury cites Alonzo v. Pliler for the proposition that the Court was not impartial when it did not grant him an extension because he did not have glasses. 53 Fed.App'x. 854 (9th Cir. Jan. 7, 2003). In Alonzo, an incarcerated petitioner filed a habeas petition. Id. at 855. However, the court rejected the petition as time barred. Id. Alonzo argued that equitable tolling should apply because he was beaten by prison staff, resulting in his glasses being broken, and he could not read or write for two years. Id. The Ninth Circuit found that the circumstances, if true,

were extraordinary and prevented Alonzo from asserting his claim on time. Id. As such, equitable tolling was appropriate. Id. Alonzo does not apply here. While Canterbury may not have had proper prescription glasses, he was able to read and write, as evidenced by the many motions he filed during the pendency of the action. Additionally, the magistrate judge ordered the U.S. Marshals to provide Canterbury with glasses if he could not afford them. (ECF #25). The trial was originally scheduled for June 20, 2016 but was continued multiple times until February 20, 2018. Canterbury's argument that he could not proceed was simply an attempt to delay his trial even further. However, he and his Stand-By Counsel had sufficient time to prepare and there is no evidence that the Court was not impartial when it reappointed Ericsson as Canterbury's counsel and began the trial. Therefore, the Court rejects Canterbury's claim that the Court was not impartial when it reappointed Ericsson and started the trial.

Canterbury's final grounds for relief are for ineffective assistance of counsel. Canterbury argues that his trial counsel was ineffective because Ericsson did not aggressively object each day of trial that the Court's ruling on the first day reappointing counsel because Canterbury was not prepared to represent himself was improper. He also argues that his appellate counsel was ineffective because it did not raise this ineffective assistance of trial counsel argument on direct appeal.

To prevail on an ineffective assistance of counsel claim, a defendant must show "that counsel's performance was deficient," and that "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). The "proper standard for attorney performance is that of reasonably effective assistance." Id. The performance inquiry "must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). To demonstrate deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland. 466 U.S. at 687. "Because of the difficulties inherent in making [this] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Canterbury cannot surmount Strickland's high bar. Ericsson's choice not to object to his reappointment as Canterbury's counsel falls within the range of reasonable assistance. Ericsson showed that he was prepared as he cross examined witnesses, objected to and got evidence withdrawn, and delivered closing arguments. He put up a defense that functioned as the counsel guaranteed by the Sixth Amendment. Further, Canterbury acknowledged that he no longer wished to represent himself. As such, Ericsson had no reason to object to his reappointment or Canterbury's terminated self-representation. Because Ericsson was not ineffective, there was no reason for Canterbury's appellate counsel to raise an ineffective assistance of counsel claim on direct appeal. As such, the Court denies both of Canterbury's ineffective assistance of counsel claims.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motions to Vacate, Set Aside, or Correct Sentence (ECF #150/181) are **DENIED**.

Dated this 3rd day of September, 2021.

_____
Kent J. Dawson
United States District Judge